IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| LAURA WHITTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 7:09-cv-01474-JEO |
| ) | |
| GUARDIAN LIFE INSURANCE ) | |
| COMPANY OF AMERICA; ) | |
| LIFE INSURANCE COMPANY ) | |
| OF NORTH AMERICA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is defendant Guardian Life Insurance Company's ("Guardian") "Motion to Transfer Venue" (doc. 11)[1] and plaintiff Laura Whitten's ("Whitten") "Motion to Determine Standard of Review" (doc. 14). The motions have been fully briefed by the parties and are ready for disposition. Guardian requests that the court transfer this action pursuant to 28 U.S.C. § 1404(a) to the Southern District of Alabama based upon the common law doctrine of *forum non conveniens*. (Doc. 11 at 1). Whitten maintains that this action should remain in the Northern District of Alabama. (Doc. 15 at 1). For the reasons outlined below, this court finds that the motion to transfer is due to be granted and the motion to determine the standard of review is due to be denied without prejudice.

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court and located at the top of each document.

1

I. **BACKGROUND**

A. **Facts**

On January 20, 2005, Whitten injured her right hand in a car accident in Mobile, Alabama, which is located in the Southern District of Alabama. At the time of the accident, the plaintiff was an employee of Xserv, Inc. ("Xserv"),[2] which provided long term disability benefits to its employees under a plan issued by Life Insurance Company of North America ("LINA"). On July 1, 2006, Xserv switched to an employee welfare benefit plan issued by Guardian. (Complaint at ¶ 10). The plaintiff filed for benefits under the applicable plan and was denied benefits on or about March 6, 2007. (*Id*. at ¶ 12). She appealed that determination and again was denied benefits by Guardian on August 22, 2007. (*Id*. at ¶ 15). Thereafter, she filed a claim with LINA, which was denied on March 6, 2009. (*Id*. at ¶¶ 22-25). She appealed that determination and was denied relief as well. (*Id*. at ¶¶ 26-30). She subsequently was found disabled by the Social Security Administration. (*Id*. at ¶ 31).

Whitten brought suit against Guardian and LINA under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, seeking to recover, among other things, long term disability benefits under an ERISA plan, in this court on July 23, 2009. (Complaint at 1).[3] Guardian filed its motion to change venue on September 4, 2009. (Doc. 11). The plaintiff filed her motion for a determination of the applicable standard of review on September 22, 2009. (Doc. 14).

Whitten is a resident of Semmes, Alabama, which is located in the Southern District of

---

[2]Xserv is also known as United Scaffolding. (Doc. 1 ("Complaint") at ¶ 2).

[3]The Complaint is located at document 1.

Alabama. (Kelly Holmes Aff. ("Holmes Aff.") at ¶ 6).[4]  Her treating physician, Dr. Frederick N. Meyer is with the University of South Alabama Medical Center in Mobile, Alabama. (*Id*. at ¶ 8). The occupational therapist who performed the plaintiff's functional capacity evaluation is employed at Fleming Rehabilitation and Sports Medicine in Mobile, Alabama. (*Id*.) Guardian made all the relevant decisions, as claim's administrator, in Lehigh Valley, Pennsylvania and LINA made its decisions concerning the plaintiff's claim in Dallas, Texas. Guardian communicated with the plaintiff previously via her residence in Semmes or through her former attorney, Edward Rowan, of Mobile. (*Id*. at ¶ 9). The plaintiff's present attorney's office is located at Northport, Alabama, in the Northern District of Alabama. Guardian's attorneys of record are with Burr and Forman, which has offices in both Mobile and Birmingham. LINA's attorneys of record are with Maynard, Cooper, which has offices in various locations, including Birmingham.

## II.    DISCUSSION

### A.    Standard

The defendant seeks a transfer of this case pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1306 (N.D. Ala. 2003) (quoting *Johnston v. Foster-Wheeler Constructors, Inc.,* 158 F.R.D. 496, 503 (M.D. Ala. 1994)). The burden is on the movant to convincingly demonstrate to the district court

---

[4]Holmes's affidavit is located at doc. 11-2.

that another venue is more convenient and that transfer is in the interest of justice. *In re Ricoh Corp.*, 870 F.2d 570, 572-73 (11th Cir. 1989); *Chrysler Credit Corp. v. County Chrysler*, *Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991); *Oller v. Ford Motor Company*, Nos. 92-523-CIV-T-17A, 92-555-CIV-T-15C, 1994 WL 143017 *2 (M.D. Fla. March 30, 1994) ("convincing demonstration") (citing *Garay v. BRK Electronics*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)[5]). The decision of whether a case should be transferred under § 1404(a) is "an individualized case-by-case consideration of convenience and fairness." *Id*. (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (prescribing a "flexible and individualized analysis")). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). "Therefore, '"if a transfer of venue would merely shift inconvenience from one party to the other," or the balance of all factors is but slightly in favor of the movant, the plaintiff's choice of venue should be given deference.'" *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1300 (S.D. Ala. 2001) (citing *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1154 (M.D. Ala. 1999), *quoting Johnston*, 158 F.R.D. at 503).

The defendant's motion presents three questions: (1) Whether this case could have been brought in the proposed transferee jurisdiction, the Southern District of Alabama; (2) Whether this case was properly filed in this District; and, (3) Whether the convenience of the parties and the witnesses and the interests of justice warrant a transfer. Each will be addressed separately below.

---

[5] The *Oller* court also stated, "Defendant must demonstrate a clear balance of inconvenience in order to prevail on its motion." *Id*., 1994 WL 143017 at *4.

B.	Analysis

1.	**Could this case have been brought in the Southern District of Alabama**?

Concerning the first inquiry, whether the case could have been brought in the proposed transferee district, (*see Pergo, Inc. v. Shaw Industries*, *Inc*., No. 1:03-cv-1709-BBM, 2003 WL 24129779 (N.D. Ga. Sep. 16, 2003)), the applicable law is clear. 28 U.S.C. § 1391(b) provides, in pertinent part, that a suit based on federal question jurisdiction may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action situated." *Id*. There is no dispute that "a substantial part of the events or omissions giving rise to" the plaintiff's claims occurred in the Southern District of Alabama. (See Doc. 11 at 3-4). Specifically, the record demonstrates that the plaintiff lives and worked[6] in the Southern District, the accident occurred in that District, and Guardian previously mailed its correspondence to the plaintiff at her residence or to her former attorney located in that District. Although Guardian admits that most decisions concerning the ERISA plan occurred in Pennsylvania, enough events occurred in the Southern District for it to be a proper forum for this matter. Furthermore, Whitten fails to raise any argument that venue in the Southern District would be improper. The court, therefore, finds that this action originally could have been brought in that District.

2.	**Whether this case was properly filed in this District?**

The plaintiff argues that venue is proper in this District under the relevant ERISA statute

---

[6]Guardian notes this fact in its response (doc. 24), and it is not contested by the plaintiff.

which states that venue is proper "in the district where the plan is administered, where the breach took place or where a defendant resides or may be found...." 29 U.S.C. § 1132(e)(2). She also notes that the ERISA venue provision is intended to expand the usual venue constraints. (Doc. 15 at 2 (citing *Barker v. New Energy Corp.*, No. CV 206-183, 2006 WL 3391347 at *2 (S.D. Ga. 2006)). In *Barker*, the court stated:

> A majority of courts confronted with the question of where a breach takes place, within the meaning of § 1132(e)(2), have found that it occurs where performance was to occur; that is, where the non-receiving party resides. Inasmuch as an ERISA action to recover benefits is, at bottom, a breach of contract case, the courts have looked to principles of contract law to support this conclusion. *See Cross v. Fleet Reserve Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citing cases); *Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 892-93 (E.D. Pa. 1997); *see also Am. Carpet Mills v. Gunny*, 649 F.2d 1056, 1059 (5th Cir. 1981).[7]
>
> This conclusion is buttressed by ERISA's liberal venue provision, which was enacted to provide plan beneficiaries broad access to the federal courts. "A potential ERISA plaintiff is granted a wide choice of Federal court venue, liberal service of process rules and relief from the jurisdictional amount requirement." *Bonin v. Am. Airlines, Inc.*, 621 F.2d 635, 636, n. 1 (5th Cir. 1980). "Thus, the issue of venue must be approached with the broad Congressional policy favoring free access to federal courts in mind." *Turner v. CF & I Steel Corp.*, 510 F. Supp. 537, 542 (E.D. Pa. 1981).
>
> When faced with the typical ERISA [plaintiff]-an individual policyholder, ... a broad personal jurisdiction provision is understandable. In enacting Section 1132(e)(2), Congress wanted to ensure that the federal and state courts were accessible to ERISA participants and beneficiaries, and that deserving plaintiffs were not denied recovery because they did not have the resources to file suit in another state. See S. Rep. No. 127, 93rd Cong., (1973), reprinted in 1974 U.S.C.C.A.N. 4838, 4871; H. Conf. Rep. No. 1280, 93rd Cong., (1973), reprinted in 1974 U.S.C.C.A.N. 5038, 5107.
>
> *Willingway Hosp. v. Blue Cross & Blue Shield*, 870 F. Supp. 1102, 1109 (S.D. Ga.

---

[7]"In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981." *Barker*, 2006 WL 3391347 *2, n.1.

> 1994); *see also Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987).
>
> Moreover, where a plaintiff files suit in her home forum, that choice of venue is entitled to substantial deference. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1988); *Duckworth v. Med. Electro-Therapeutics, Inc.*, 768 F. Supp. 822, 831 (S.D. Ga. 1991) (plaintiff's choice of venue should not be disturbed unless it is clearly outweighed by other factors).

*Barker*, 2006 WL 3391347 at *2.

The defendant does not assert that venue in this District is improper. Instead, Guardian argues that a transfer is warranted due to the absence of a connection between the plaintiff's case and the Northern District of Alabama besides the fact that the plaintiff's counsel has an office here.[8] (Doc. 11 at 3). Accordingly, the court finds that venue is proper in that the defendant may be found in this District.

### 3. Whether the convenience of the parties and the witnesses and the interests of justice warrant a transfer.

The next determination is "whether the balance of convenience favors transfer." *Johnston*, 158 F.R.D. at 504. In evaluating this aspect, a balancing of practical considerations – the interests of the parties and witnesses and the interests in justice – is necessary. In assessing these matters, the courts "generally consider the following factors: the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of

---

[8]To the extent that Guardian agues that a transfer should be based on grounds of *forum non conveniens*, the court notes that the United States Supreme Court, in *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, has stated:

> The common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad and perhaps in rare instances where a state or territorial court serves litigational convenience best. For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action.

549 U.S. 422, 430 (2007) (internal citations omitted) (internal quotations omitted). Applying *Sinochem*, the court's analysis will proceed premised on section 1404(a) considerations. *See Sinochem*, 549 U.S. at 430.

access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency." *Vizionworks, LLC v. Ellenburg*, No. 2:07-cv-96-MEF-TFM, 2007 WL 1100512 at *2 (M.D. Ala. April 12, 2007) (citing *Folkes v. Haley*, 64 F. Supp. 2d 1152 (M.D. Ala. 1999); *Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 932 F. Supp. 281, 282 (M.D. Fla. 1996)).[9]

### a.     The Plaintiff's Initial Choice of Forum

The federal courts traditionally accord a plaintiff's choice of forum considerable deference. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947); 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.145[5] (1988); *see also Dorsey v. Hartford Life & Accident Insurance Co.*, No. 1:08-cv-243, 2009 WL 703384 at *4 (E.D. Tenn. March 16, 2009)[10] ("In most instances 'the courts traditionally accord some deference and give substantial weight to the plaintiff's choice of forum, but it is not dispositive.'") (quoting *Inghram v. Universal Indus. Gases, Inc.*, 2006 WL 306650, *6 (E.D. Tenn. February 8, 2006) ((citing *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955)).  And, as noted above, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.  However, where the operative facts of

---

[9] The court in *A.J. Taft Coal Co., v. Barnhart*, 291 F. Supp. 2d 1290 (N.D. Ala. 2003), enumerated the considerations slightly different:

> [C]ourts generally examine [1] the location of principal material witnesses, [2] the relative ease of access to sources of proof, and [3] the ability of the parties to bear the expense of changing forum ... [4] [W]here the operative facts underlying the cause of action transpired is a consideration for convenience ... [5] Courts look to a forum where the trial is most easy, expeditious and inexpensive.

*Id*. at 1311 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).

[10] Also located at document 23-2 in the court's file.

the action do not occur within [the p]laintiff's chosen forum, the choice of forum is entitled to less consideration by the court." *Oller*, 1994 WL 143017 at *2 (citing *Garay v. BRK Electronics*, 755 F. Supp. 1010 (M.D. Fla. 1991)); *see also Johnson v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 505 (M.D. Ala. 1994) ("Where none of the conduct complained of took place in the forum selected by Plaintiff, the Plaintiff's choice of forum is of minimal value in determining whether to transfer an action." (citations omitted)).

The undergirding factor for the plaintiff's choice of the Northern District of Alabama is that her attorney's office is located here. She further asserts that her choice of forum is based on her intent "to minimize the costs and expenses" associated with the case. (Doc. 15 at 5). Accordingly, she concludes that her choice of this forum "is a factor weighing against transfer to the Southern District." (*Id*.) Although the plaintiff "has waived the convenience of venue for herself," she states that this District "is actually more convenient for [her] ... due to the fact that [her] counsel's office is located in the Northern District. Since the [p]laintiff's case expenses and fees related to her claim are paid out of any recovery, it is important for [her] to keep case expenses and attorney's fees as low as possible." (*Id*. at 6). She further states, "It is actually more burdensome and costly to [her] for [her] counsel to be required to travel to the Southern District of Alabama than it is for [her] to travel to the Northern District." (*Id*. at 7). She also states that this is particularly true in light of the fact that she "is not likely to have to travel to any hearings or provide oral testimony, whereas [her] counsel will be required to attend such hearings." (*Id*.) Accordingly, she concludes this factor weighs against a transfer.

Guardian counters that the plaintiff's choice of forum should be ignored because "all of the events giving rise [to this action] occurred, if at all, in or around Mobile or outside of

9

Alabama altogether" and that "all of the doctors who would offer any records or testimony, and all individuals who have any knowledge of [the p]laintiff's claim, are located in or around the Southern District of Alabama." (Doc. 11 at 3). Guardian further notes that the only connection the plaintiff has with the Northern District is that her attorney is located here. (*Id*.) Guardian concludes that these facts warrant a transfer. (*Id.* at 2).

   Although the plaintiff's choice generally is entitled to deference, it is not in this case due to the fact that this District is not her home forum and none of the operative events occurred here. Accordingly, the plaintiff's choice, while significantly lessened in this case, "is [to be] given the same weight as the other factors considered in a transfer analysis." *Dorsey*, 2009 WL 703384 at *4. This court concludes that the first factor weighs in favor of denial of the motion to transfer.

      **b.**  **The Convenience of the Parties and Witnesses**

   The next five factors all relate to practical, litigation related considerations concerning the parties and witnesses. With regard to the first, the convenience to the parties, the court has already discussed the convenience to the plaintiff. Guardian argues that all of its actions and decisions regarding the plaintiff's claim were made at a company facility in Pennsylvania and communicated to the plaintiff at her residence. (Doc. 11 at 5). Similarly, as best this court can discern, LINA's claim decisions were made in Dallas, Texas. (Doc. 15 at 8). However, the court notes that LINA has not joined in the motion to transfer. This factor does not weigh in favor of granting the transfer.

   With regard to the convenience of the witnesses, the court must begin the discussion with reference to the plaintiff's motion to have this court determine the standard of review. (Doc. 14). As a general rule, ERISA matters are determined upon a review of the administrative record

without a trial.  *See e.g. Dorsey*, 2009 WL 703384 at *5 ("It appears the issues in this action will be decided based upon the ERISA administrative record and a trial will not be necessary.").  The plaintiff argues, however, that it is "incumbent" on this court to decide the applicable standard of review because if it is determined that the arbitrary and capricious standard is applicable then "the doctrine of *forum non conveniens* is applicable as there are no witnesses such as the treating doctors in question whose proximity to the courthouse should be taken into account in determining the convenience of venue." (Doc. 14 at 3).  The plaintiff further argues that if the *de novo* standard is applicable, the testimony of the treating physicians, and presumably, other medical personnel, will not be necessary because she has presented all the medical information to the defendants.  (*Id*. at 3-4).  Her only anticipated discovery would concern the disability analysts and claims representatives of the defendants.  (*Id*. at 4).  Upon consideration, the court declines to determine the applicable standard of review at this juncture.  The undersigned believes that the motion to transfer can be evaluated and decided without disposition of the motion to determine the standard of review.  Additionally, the court finds that forcing such a ruling at this juncture would not be judicious due to the state of the present record.  For these reasons, the motion (doc. 14) is due to be denied without prejudice.

Should the reviewing court determine that the arbitrary and capricious standard is applicable, the matter will be decided on the administrative record and there would be no palpable inconvenience to the parties or the witnesses warranting a transfer.  If it is determined that the *de novo* standard is applicable, the parties have identified no witnesses that are located in this District.  All of the potential witnesses identified by Guardian (e.*g.*, the plaintiff; her treating physician, Dr. Fredrick N. Meyer; her Occupational Therapist, Barrett Wallis; and Guardian

employees), are located in the Southern District of Alabama or in Pennsylvania.[11] The plaintiff also notes that "there are many more potential witnesses in this litigation from Pennsylvania and Texas than there are located in the Southern District of Alabama." (Doc. 15 at 8). Because no witnesses reside here, pretrial matters, such as interviews and depositions in a *de novo* situation, would have to be conducted elsewhere. Additionally, as noted by United States District Judge R. David Proctor in a similar matter, "it will also be easier for the parties litigating in the Southern District of Alabama to compel witnesses to attend depositions, and, if necessary, trial (especially those who are not subject to compulsory process in the Northern District of Alabama) and to seek productions of documents pursuant to subpoena." *See Morris v. Astrazeneca Pharmaceuticals*, 7:05-cv-02398 (N.D. Ala. February 10, 2006).[12] Accordingly, this factor favors the granting of the motion to transfer. *Tritt v. Automatic Data Processing, Inc.*, *Long Term Disability Plan Administrator*, No. 3:06-cv-2065, 2008 WL 2228841 (D. Conn. May 27, 2008) ("The Court agrees that the procedural posture of this case renders the convenience of the witnesses less significant than in cases where witness testimony will undoubtedly be required. At the same time, however, should these witnesses be required to testify, most of them reside in New Jersey.... Accordingly, this factor weighs somewhat in favor of transferring the case.").[13]

  To the extent that travel may be required, the plaintiff's chosen forum presents a slight

---

[11]Guardian also notes that non-parties, such as Dr. Meyer or Mr. Wallis, to the extent they reside more than 100 miles from this court, can move this court under FEDERAL RULE OF CIVIL PROCEDURE 45(c)(3)(A)(ii) to quash a subpoena that requires "travel to a place more than 100 miles from [their residences, employment or business], except that ... such a person may [be compelled to attend trial]." (Doc. 11 at 6).

[12]Judge Proctor's Memorandum Opinion is located at document 11-3 in the court's file.

[13]The *Tritt* court also noted that if the plaintiff was "correct, then witness testimony would be required. This possibility gives the defendants' arguments concerning the convenience of the witnesses greater weight in the Court's resolution of their motion." *Id*. at *3 n.3

advantage in that Birmingham does have an international airport which permits easier access to the parties and witnesses, particularly those from Pennsylvania and Texas.  In contrast, the available flights to Mobile are more limited.  "This practical consideration" of inconvenience in travel weighs slightly against the motion to transfer.  *Oller*, 1994 WL 143017 at *3.

With regard to access to sources of proof and the location of the relevant documents, to the extent discovery outside the ERISA administrative record is sought and appropriate, such as on the issue of conflict of interest, claims decision issues, and corporate policies and guidelines, "it appears most, if not all, of the discovery would be directed to persons and documents located in [Pennsylvania and Texas] where the final decision[s] w[ere] reportedly made...." *Dorsey*, 2009 WL 702284 at *5.  Additionally, the plaintiff states, "Most, if not all of this information, is located in multiple forums, including both the Northern and Southern Districts of Alabama, as well as Pennsylvania and Texas." (Doc. 15 at 14).  Even if the plaintiff is incorrect in this assertion, the availability of electronic media obviates much of the court's concern in this area.  Under these circumstances, this factor does not weigh in favor of or against a transfer.

As to the financial factor, the plaintiff argues that the expense of transferring this case "would significantly increase costs, both for the [p]laintiff as well as LINA, as both parties would then have to travel in excess of 250 miles to the courthouse." (Doc. 15 at 14).  The plaintiff concludes that this would place a significant financial burden on her due to the increase in attorney's fees and case expenses.  (*Id*.)  In response, Guardian simply states that the location of the plaintiff's attorney is not a factor that should be considered. (Doc. 18 at 3 (citing *Island View Residential Treatment Center v. Kaiser Permanente*, 2009 WL 2614682, *3 (D. Utah August 21, 2009) ("indicating that the court was giving no deference to the location of plaintiff's counsel as

§ 1404(a) 'says nothing about the convenience of counsel'") and *Chicago, R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 303-04 (7th Cir. 1955) ("noting that the convenience of counsel is immaterial and should not be considered as a factor in determining whether transfer is proper under 28 U.S.C. § 1404(a)").

The court finds that convenience to counsel is not an appropriate consideration. However, added costs resulting from a transfer of the matter to another forum is appropriate for review. As best this court can discern from the present record, the resources available to Guardian are substantial when compared with the plaintiff. Although the court cannot tell exactly how long present counsel has represented the plaintiff, it is evident that he is well engaged and committed to her case. To impose additional costs on the plaintiff because of a transfer tends to weigh in favor of denying the motion to transfer. *See Tritt*, 2008 WL 2228841 at *4 (noting that "[i]n light of the time and money Tritt already invested in pursuing this case with her current attorney, the additional financial hardship she may suffer should the case be transferred, and the relative means of the parties, the Court finds that this factor weighs against granting the transfer").

                c.        **Interest of Justice**

The "interest of justice" factor mandates that this court weigh the "public-interest factors of systemic integrity and fairness." *Richoh*, 487 U.S. at 30; *Dorsey*, 2009 WL 703384 at *2. The court in *Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.*, No. 1:09-cv-690, 2009 WL 4885224 (W.D. Mich. Dec. 16, 2009), noted that the "public interest" factors include the following:

> (I) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in ... deciding local controversies at home; (v) the public policies of the fora; [and] (vi) the familiarity

of the trial judge with the particular state law.

*Id*. at *12 (quoting *Steelcase, Inc. v. Smart Techs, Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).

As in the *Cincinnati Ins*. case, the first factor, dealing with the enforceability of a judgment, is not implicated in this instance. Additionally, the fourth through sixth factors, the local interest, compelling public policies of the courts and the familiarity of the trial judge with the particular law, are neutral. Neither party suggests that the court of one District justifies a transfer for these reasons. Additionally, this court does not see any of these as being decisive. The parties do not argue, nor does the undersigned have any reason to believe, that one jurisdiction is better suited to dispose of this matter than another under these factors. Thus, the consideration of the same is neutral.

The second and third factors, trial and docket management, are appropriate considerations. The plaintiff asserts that "[t]rial efficiency would certainly mandate that this case remain in the Northern District, given that several pleadings have already been filed in the Northern District, and further given that the timeliness of moving the case along would be enhanced by keeping it in the district in which it is filed, rather than transferring the case." (Doc. 15 at 15). The plaintiff further reiterates that "the expense of litigation would be less for all parties involved if the case remained in the Northern District." (*Id*.) The defendant does not specifically address this issue.

At the outset, the court notes that this matter was filed on July 23, 2009, seven months ago. The motion to transfer was filed about six weeks later on September 4, 2009, and it has been under submission about three months, following extensive briefing. In addressing the

interest of justice consideration, the undersigned is impressed with Judge Proctor's comments in *Morris*.[14] He stated:

> ... this case has little or no relationship to the Northern District of Alabama. All of the facts surrounding this case – including the events underlying this suit, the location of the evidence, the location of Plaintiff and the Plan, and the location of the witnesses – point to the Southern District of Alabama, not the Northern District, as the best forum. The burden on this court's docket of entertaining a case outside its District, with little or no connection to the District, is significant. On the other hand, because this case involves residents of the Southern District of Alabama and alleged ERISA violations which took place in the Southern District of Alabama, that District *does have* a significant interest in having this case decided by a court within its borders.
>
> The interests of justice support transfer of this suit to the Southern District of Alabama.

*Morris*, at 7 (Doc. 11-3 (italics in original)). Premised on the reasoning of Judge Proctor, which the court finds persuasive, the undersigned finds that the interests of justice factor weighs in favor of the transfer of this matter to the Southern District.[15]

### d. Summary

After carefully applying and weighing all of the foregoing factors, the court finds that Guardian has convincingly demonstrated that the Southern District of Alabama is more

---

[14]*Morris* involved an ERISA long term disability claim as well. The plaintiff resided in the Southern District of Alabama and generally worked in that area. Her doctors were located there or in nearby Pensacola, Florida. She filed her disability claim with the defendant in South Florida and all correspondence was directed to her residence in the Southern District of Alabama. At some point, she employed an attorney in Tuscaloosa, Alabama in this District and all communications thereafter have been directed to said counsel. (Doc. 11-3 at 1-2).

The plaintiff argues that reliance on *Morris* is inappropriate, in part, because the defendant in that case "took an inconsistent position once the case was transferred" (doc. 15 at 15), the court does not find said argument to be persuasive. To the extent that Guardian might advance an inconsistent position following the transfer, this court is confident that the plaintiff's counsel will make the court aware of the same and that court will be equipped to address the situation if it deems it appropriate.

[15]The court recognizes that a transfer of this matter may result in some delay in processing, however, that would be minimal in the undersigned's experience.

convenient and that transfer to that District is in the interest of justice. Because the plaintiff has failed to demonstrate any connection with this District aside from the location of her counsel and because the Southern District has a significant interest in this case due to the fact that the plaintiff resides there and the operative facts occurred, the motion to transfer is due to be granted.

### III. CONCLUSION

Premised on the foregoing, this court finds that Guardian's motion to transfer venue is due to be granted and the motion to determine standard of review is due to be denied. An appropriate order will be entered contemporaneously herewith.

**DONE**, this the 4th day of March, 2010.

*John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge